## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

HDEEL ABDELHADY,

              *Appellant,*

*v.*

GEORGE WASHINGTON UNIVERSITY, ET AL.

              *Appellees.*

No.: 23-7001

## APPELLANT'S RESPONSE TO MAY 5, 2023 ORDER TO SHOW CAUSE

### INTRODUCTION AND SUMMARY

The concerns underlying this Court's May 5, 2023 Order to show cause are not applicable in this case. Show Cause Order, Document # 1998133 (discussing Fed. R. Civ. P. 54(b) and *Blue v. District of Columbia Pub. Schs.*, 764 F. 3d 11, 17-18 (D.C. Cir. 2014)). This case does not involve a party-controlled dismissal, *Blue*, 764 F. 3d at 116, or otherwise implicate "*Blue's* fundamental concern about parties manufacturing superficial finality" for the purpose of appeal, *Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1027 (D.C. Cir. 2020).

When this appeal was taken on December 30, 2022, the District Court's November 30, 2022 Order was an appealable interlocutory order under 28 U.S.C. § 1291 and 1292(a)(1), under the collateral order doctrine and because the Order and its Memorandum Opinion have "'serious, perhaps irreparable, consequence'" and

cannot be "'effectually challenged' only by immediate appeal." *Carson v. Am. Brands*, 450 U.S. 79, 84 (1981); Notice of Appeal, ECF No. 71; Order, ECF No. 63; Mem. Op., ECF No. 66. This includes that the Order, which, *inter alia,* directly addresses the merits of all the claims pleaded against The George Washington University (GWU) and PMA Management Corporation (PMA), practically restrains the amendment or assertion of new claims against GWU and PMA. *Ctr. for Nat. Sec. Studies v. C.I.A.*, 711 F.2d 409, 412 (D.C. Cir. 1983) ("When . . . the order involves a decision directly addressing the merits of the case, an immediate appeal is available under § 1292(a)(1)."). In that interlocutory posture, the District Court's declination to enter final judgment under Fed. R. Civ. P. 54(b) was immaterial to this Court's statutory jurisdiction.[1] *Pang-Tsu Mow v. Republic of China*, 201 F.2d 195, 197 (D.C. Cir. 1952) (Section § 1292 "explicitly authorizes an appeal from . . . an interlocutory order, and we do not think a determination and direction under Rule 54(b) is a condition thereto even though the suit involves multiple claims."); Mem. Order, ECF No 87 (denying Rule 54(b) Motion for Entry of Final Judgment [ECF No. 69]).

---

[1] Ms. Abdelhady's Motion for Entry of Final Judgment Pursuant to Rule 54(b) and a reply in support of that motion discussed aspects of the then-interlocutor Order's appealability. Pl. Mot. Entry of Final Judgment Pursuant to Rule 54(b), ECF No. 69 p. 7 n. 2, p. 11 n. 4; Pl. Reply to GWU Opp'n to Mot. for Entry of Final Judgment Pursuant to Rule 54(b), ECF No. 82 p. 4.

On March 21, the Order became a "final decision" under 28 U.S.C. § 1291, as a consequence of the District Court's order under Fed. R. Civ. P. 41(a)(2) dismissing from the action without prejudice Aramark Services, Inc. and Aramark Management Services Partnership (together "Aramark") and directing the clerk to "close this case." Min. Order, Mar. 20, 2023. That March 20 dismissal, "[b]y court order . . . on terms deemed proper by the court," Fed. R. Civ. P. 41(a)(2), "merge[d] the claims" disposed of by the Order on appeal and "create[d] a single, final disposition for appellate review." *Blue*, 764 F. 3d at 16 (party-controlled dismissal under Fed. R. Civ. P. 41(a)(1)(A)(ii) did not create a single, final order for purposes of appeal). *Accord Robinson-Reeder v. American Council on Educ.*, 571 F.3d 1d 333, 1339 (2009) (dismissal by court order under Rule 41(a)(2) triggers appellate jurisdiction under 28 U.S.C. § 1291 but dismissal under Rule 41(a)(1)(A)(ii) does not).

If this Court determines that court-ordered dismissal did not render the Order a "final decision" under 28 U.S.C. § 1291, it should review the Order under § 1291, pursuant to the collateral order doctrine, and § 1292(a)(1). Or, the Court should permit combined briefing on jurisdiction and the merits, because the applicability of the collateral order doctrine and § 1292(a)(1) is intertwined with the merits. If, however, the Court determines it lacks appellate jurisdiction, it should proceed alternatively under Fed. R. App. P. 21 for reasons to be addressed

3

in a petition for a writ of mandamus if needed. Those reasons include that the District Court, on its own initiative and without prior actual or constructive notice, granted PMA summary judgment on Count I of the Amended Complaint for negligence/premises liability, despite that Count I was not pleaded against or contested by PMA. Am. Coml. ¶ 297, ECF No. 13 (sealed); ECF No. 14 (redacted); PMA Mot. Dismiss, ECF No. 24; PMA Reply in Support of Mot. Dismiss, ECF No. 35. *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964) (quoting *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 383 (1953) ("The writ is appropriately issued . . . when there is 'usurpation of judicial power' or a clear abuse of discretion.").

## BACKGROUND

### I.      Summary of Claims in the District Court

Eight claims were pending in the District Court, for: negligence/premises liability (Count I); racketeering (Count II); negligent infliction of emotional distress (Count III); fraud (Counts IV-V); tortious inducement of breach of fiduciary duty (Count VIII); abuse of process (Count IX); and, violation of rights (42 U.S.C. § 1983) (Count X). Am. Compl. p. 55-67, ECF No. 13. Count I was pleaded against GWU and the Aramark entities. *Id.* at ¶ 297. Count III was asserted against all Defendants. *Id.* at ¶ 319. The remaining counts were pleaded only against GWU and PMA. *Id.* at p. 56-67.

The claims arise from two distinct categories of facts set forth in 267 paragraphs of "factual background." *Id.* at ¶¶ 9-295. The first, in support of Count I, is that Ms. Abdelhady sustained an accident and injuries on GWU's premises, at the GWU law school, in May 2019 after attending at the law school's invitation an "adjunct appreciation" event to receive an award for then 15 years of teaching part-time. *Id.* ¶¶ 9-14; *see also* Pl. Aff. in Opp'n to GWU's Mot. SJ ¶¶ 14-15, ECF No. 26-5. She asserts Count I against GWU as property owner and invitor, and against Aramark as GWU's alleged "facilities services" contractor *additionally* responsible for the condition of GWU's premises. *Id.* at 10, 6-7, 60-69, 297-302.

The bulk of the Amended Complaint's allegations support the remaining claims, and support Count I *only* against GWU. *Id.* at ¶¶ 85-285. Those allegations include that GWU, with PMA's assistance and participation: was not at relevant times, and misrepresented that it was, an employer that had "secured payment of compensation" as required under the District of Columbia Workers' Compensation Act of 1979, D.C. Code §§ 32-1501-45 ("WCA"); misrepresented to its employees, including to Ms. Abdelhady (a non-continuous part-time employee), that it maintained a workers' compensation program; and, for years engaged in a pattern of conduct to avoid and subvert the workers' compensation system, including to obtain the only the veneer of "self-insured" status, and its financial, legal, and operational benefits, by, *inter alia*, underreporting its payroll, misclassifying its

employees in lower- risk and cost workers' compensation classification codes, and misusing litigation to avoid legitimate employee claims. *E.g.,* Am. Compl. ¶¶ 199-285. The foregoing allegations, and others, also relate to Count I against GWU, specifically whether WCA applied to Ms. Abdelhady's injuries and, if so, whether GWU could avail of the "exclusive remedy" defense. D.C. Code §§ 32-1503(a) (applicability of WCA); § 1504(b) (employer that fails to secure workers' compensation may not assert "exclusive remedy"). The same and related allegations also support the fraud and racketeering claims. Am. Compl. ¶¶ 303-17, 323-38.

The claims for tortious inducement of breach of fiduciary duty, abuse of process, and violation of rights stem from a workers' compensation "contested case" that was before the District of Columbia Department of Employment Services (DOES). The Amended Complaint alleges that, *e.g.,* GWU and PMA deprived her of an impartial proceeding and honest services by offering and giving to the presiding ALJ, a D.C. Government employee, things of value to her, namely, "help" in her then active application for a Maryland judgeship. *Id.* at ¶¶ 152-159. GWU and PMA also allegedly procured in that "contested case" off-the-record subpoenas from the ALJ by which they induced, including by misrepresentation, medical providers to unlawfully disclose Ms. Abdelhady's medical records. *Id.* at ¶¶ 173-86. When Ms. Abdelhady learned of the subpoenas *after they were*

6

*executed* and of the disclosures *after they were made*, the disclosures were investigated by the U.S. Department of Health and Human Services for HIPAA violations, and were found to have violated the HIPAA Privacy Rule. Am. Compl. *Id.* at ¶ 181.

## II.     The Order on Appeal

The Order disposed of all claims in favor of GWU and PMA, as follows.

Count I: Summary Judgment in Favor of GWU and PMA; Dismissals in Favor of PMA on Converted Rule 12(b)(6) Motion

The District Court granted GWU summary judgment on Count I, on concluding that Ms. Abdelhady's injuries were "work-related" because they would not have occurred "but for" her part-time employment with GWU, and that GWU was a "lawfully self-insured employer" "immune" under the WCA from suit on Count I. Whether GWU was "lawfully self-insured" was governed by the WCA's provisions, particularly those governing self-insurance. The District Court did not discuss or receive argument from GWU on those provisions, and based its conclusions solely on GWU's affidavit and its four exhibits, the legal sufficiency and significance of which were governed by District of Columbia law. While disregarding the bulk of the Amended Complaint's allegations, Ms. Abdelhady's opposition to GWU's motion for summary judgment, and disallowing discovery, the District Court stated that Ms. Abdelhady's arguments concerning GWU's lack

of, or unlawfully procured, "self-insured" status were "patently frivolous" and that Ms. Abdelhady's "problem" was that "she has not produced any evidence suggesting that GW fraudulently obtained insurance coverage." Mem. Op., ECF No. 27, 29. In reaching these and other conclusions, the District Court decided not only the merits of GWU's claimed "immunity" from suit on Count I, it also indirectly decided the merits of the fraud and racketeering claims that relied in substantial part on Ms. Abdelhady's allegations that, *e.g.*, GWU illegitimately obtained the veneer of self-insured status.

The District Court also granted PMA summary judgment on Count I, on concluding that PMA was an "insurer" under the WCA, and as such also immune from Count I under the WCA. Here also, the District Court did not discuss the WCA's provisions defining "insurer," and did not discernably contemplate that "insurer" is a statutory term. Mem. Op. p. 18-32. In the final footnote on the penultimate page of the 32-page Memorandum Opinion, the District Court announced that it had converted, *sua sponte* and without prior notice, PMA's Rule 12(b)(6) motion to a motion for summary judgment, "because the Court consider[ed] matters outside the pleadings," but did not identify those "matters." *Id.* at p. 31 n. 12. PMA did not "file matters outside the pleadings." PMA late-filed a Rule 12(b)(6) motion consisting of two paragraphs claiming to "adopt" the entirety of GWU's Rule 12(b)(6) motion. PMA Mot. Dismiss, ECF No. 23. The

District Court considered on PMA's behalf extra-pleading matters filed by GWU, but omitted mention of this critical fact in its Memorandum Opinion, and disregarded Ms. Abdelhady's opposition to PMA's Rule 12(b)(6) motion and claimed "adoption." Pl. Opp'n to PMA Mot. Dismiss, ECF No. 30. The District Court dismissed claims in favor of PMA largely by adopting GWU's Rule 12(b)(6) motion on PMA's behalf. Despite resolving PMA's Rule 12(b)(6) motion under Rule 56, the District Court granted PMA dismissals of seven claims on the same Rule 12(b)(6) motion that it converted, but did not cite any legal authority for its grants of dispositive relief, one a single motion, under two Federal Rules of Civil Procedure and one Local Rule. *See generally* Mem. Op., ECF No. 66.

<u>Mischaracterization of Plaintiff's Affidavit</u>

The Court deemed Plaintiff's affidavit a "sham" and excluded the affidavit and its 21 exhibits that are GWU's undisputed business records, DOES records, and a record of a third party acting on PMA's behalf. Mem. Op., ECF No. 66 p. 24-27. The District Court reached these conclusions in reliance on attributions to the affidavit of language it did not contain, and a quotation from a fragment from a sentence to which the District Court added a gloss that was inconsistent with its plain meaning.  Mem. Op., ECF No. 66 p. 24-27. The District Court declined to entertain the Rule 54(b) motion to revise and correct, or clarify, the Order, including its characterizations of the affidavit, because the 17-page memorandum

in support of the motion exceeded Judge McFadden's ten-page limit on Rule 54(b) "reconsideration" memoranda that he "strongly disfavored."[2] Min. Order, Dec. 27, 2023 (denying Revised Mot. for Leave to Exceed Standing Order's Page Limit [ECF No. 68])). *Compare* LCvR 7(e) (affording a 45-page limit for all motions and memoranda without regard to motion type or presiding judge).

<u>Count III: Dismissal Under Rule 12(b)(6)</u>

The District Court dismissed under Rule 12(b)(6) the NIED claim at Count III of the Amended Complaint, reasoning that GWU's part-time employer role and PMA's "third party administrator" role did not give rise to a "special relationship" required to state an NIED claim under *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810-11 (D.C. 2011) (en banc). Mem. Op., ECF No. 66 p. 9-11 (relying secondarily on *Robinson v. Howard Univ., Inc.*, 335 F. Supp. 3d 13, 22 (D.D.C. 2018) (McFadden, J.)). These grounds for dismissal were and remain inapplicable Aramark, which is not an employer or a "third party administrator," and had no known role in or related to the workers' compensation claim.

---

[2] That December 23 motion at ECF No. 68 was Ms. Abdelhady's second motion for leave to exceed the Standing Order's page limit. The first, filed without a proposed memorandum on December 6, sought to file a memorandum of up to 25 pages (below the limit under LCvR 7(e)), and was denied on December 7. Min. Order, Dec. 7, 2022 (denying Mot. for Leave to File Rule 54(b) Memo. in Excess of Ten-Page Limit [ECF NO. 67]).

Count II: Dismissal Under Both Rule 12(b)(6) and LCvR 7(b)

In dismissing the racketeering claim, the District Court cited only eight paragraphs of the Amended Complaint, and disregarded the roughly 200 paragraphs that supported that claim, and mischaracterized the allegations, stating for example that Ms. Abdelhady alleged "single" scheme that affected her only. Mem. Op., ECF No. 66 p. 7, 6-9. The racketeering claim was dismissed in part as "conceded" under LCvR 7(b), despite that Ms. Abdelhady's opposition to GWU's motion to dismiss responded to GWU's arguments. Pl. Opp'n GWU Mot. Dismiss, ECF No. 25-1. By disregarding Ms. Abdelhady's allegations and motions papers but concluding that they failed to state a claim or respond to GWU's dispositive motion – that the District Court "adopted" for PMA – the Memorandum Opinion precludes the assertion of the same allegations and arguments that were not, in fact, considered.

Counts IV-V: Dismissals Under LCvR 7(b)

The District Court also dismissed the fraud claims as "conceded" while disregarding the bulk of the Amended Complaint's allegations and Ms. Abdelhady's robust oppositions to GWU's dispositive motions that the Court, again, "adopted" on behalf of PMA. Mem. Op., ECF No. 66 p. 11-12. These dismissals, and the others, are "without prejudice" in name only, as Ms. Abdelhady

cannot amend the complaint, assert the same allegations, or present the same

motions arguments that were ignored, but nevertheless deemed inadequate.

Count VIII: Dismissal Under Rule 12(b)(6)

The District Court "agreed" with "Defendants" GWU and PMA that Ms.

Abdelhady failed to state a tortious inducement of breach of fiduciary duty claim

because she did not "allege[] that a medical provider actually breached a duty to

her" or that GWU and PMA's DOES subpoenas caused her "damage." Mem. Op.,

ECF No. 66 at 13. Here again, the District Court disregarded the Amended

Complaint's allegations, *including* that the same "medical providers" breached

their duty of confidentiality to Ms. Abdelhady, including but not limited to under

HIPAA regulations, were investigated for the HIPAA breach, and were found to

have violated their duty of confidentiality. *Id.* at 13-14. The District Court's stated

reasoning precludes amendment of the complaint in reliance on the same

allegations that were not considered.

Count IX: Dismissal Under Rule 12(b)(6)

To dismiss the abuse of process claim, the District Court again disregarded

relevant allegations, and reached conclusions that discredited allegations and

expressly credited GWU's factual claims improperly asserted in its Rule 12(b)(6)

motion and reply. The District Court concluded that GWU and PMA did not abuse

process, but merely availed of the WCA's "discovery mechanisms." *Id.* at 15. The District Court also mischaracterized the abuse of process claim as a "HIPAA claim" for which there was no remedy under HIPAA regulations. *Id.* at 16. The Amended Complaint does not, however, assert a HIPAA claim or any claim that may be construed as such. Amendment or assertion of this claim is precluded or impaired nevertheless by the Order and Memorandum Opinion.

Count X: Dismissal Under Rule 12(b)(6)

The District Court concluded, *inter alia*, that GWU and PMA "did not act under color of state law" to dismiss the § 1983 claim, because Ms. Abdelhady did not "plead facts suggesting the existence of an agreement between the Defendants" and the ALJ, the D.C. Government employee. *Id.* at 16-18. The Court disregarded, *inter alia*, Ms. Abdelhady's allegations that GWU and PMA, through their shared attorney, offered and gave to the ALJ, while presiding, things of value to her, and engaged in off-the-record communications with the ALJ regarding those things. *E.g.*, Am. Compl. ¶¶153-59. Had the District Court considered the relevant allegations and dismissed the claim without prejudice, amendment to cure legitimate defects could have been made. The same cannot occur with the Order and Memorandum Opinion in place as is.

### III.    Dismissal of Aramark Under Fed. R. Civ. P. 41(a)(2)

About a month into discovery, Ms. Abdelhady had responded to Aramark's written discovery and propounded written discovery on Aramark. Ms. Abdelhady also sought subpoenas from the clerk directed to GWU, PMA, and to company that GWU claimed was its excess workers' compensation insurance provider, on points related to her claims against Aramark. Pl. Request Subpoenas, ECF No. 88. The District Court Clerk's office notified Ms. Abdelhady that the District Court maintains a "practice" of refusing subpoenas to *pro se* parties, and will issue subpoenas only after a request is made to and approved by the presiding judge. *Id.* Ms. Abdelhady moved to dismiss Aramark from the action under Rule 41(a)(2) for reasons having nothing to do with this appeal. Pl. Mot. Dismiss, ECF No. 93. The motion was filed after Ms. Abdelhady's claims against Aramark were jeopardized by the District Court's unwritten "practice" of withholding subpoenas from *pro se* parties in contravention of Fed. R. Civ. P. 45. *Id.* That "practice" impaired the press of Ms. Abdelhady's claims and encroached on her autonomy as a litigant, including by transferring control the issuance and timing of subpoenas to the presiding judge who in this case did not act on a request for three subpoenas that were rendered nonviable by the passage of time. Ms. Abdelhady moved to dismiss solely in response to the District Court's subpoena "practice" and the presiding judge's non-responsiveness.

## ARGUMENT

### I.    The Order is a "Final Decision" Under 28 U.S.C. § 1291

The District Court's March 20, 2023 minute order dismissing Aramark from the action pursuant to Fed. R. Civ. P. 41(a)(2) rendered the Order on appeal a "final decision" under 28 U.S.C. § 1291. *Robinson-Reeder*, 571 F.3d at 1339 (appellate jurisdiction lacking because "there was no court order [under Rule 41(a)(2)] dismissing the remaining claim . . . rather, dismissal was accomplished by stipulation of the parties alone pursuant to . .  [Rule] 41(a)(1)); *Blue,* 764 F.3d at 16 n. 3 (rejecting argument that stipulated dismissal was a dismissal by court order under Rule 41(a)(2)). *Accord Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1231 (11th Cir. 2020) (quoting *McGregor v. Bd. of Com'rs of Palm Beach Cnty.*, 956 F.2d 1017, 1020 (11th Cir. 1992)) ("we hold that an order granting a motion to voluntarily dismiss the remainder of a complaint under Rule 41(a)(2) 'qualifies as a final judgment for purposes of appeal.'").

As in *Shatsky*, 955 F.3d at 1027, "*Blue*'s fundamental concern about parties manufacturing superficial finality while hijacking the district court's control over final resolution of the litigation is not a factor in this case." There was no need to manufacture finality in this case, and no effort was made to do so. As discussed above, this appeal was taken from an interlocutory order appealable under Canty 28 U.S.C. §§ 1291 and 1291(a)(1). Ms. Abdelhady moved to dismiss Aramark to

remove her claims from the District Court's case-jeopardizing, manifestly unfair, and most certainly invalid "practice" of withholding subpoenas from *pro se* litigants, the adverse effects of which were compounded by the presiding judge's inaction on Ms. Abdelhady's subpoena request.

The District Court fully controlled the litigation's finality. *Shatsky*, 955 F.3d at 1027 (the trial court's "control" of the litigation's finality is critical to appellate jurisdiction). Each of the Aramark entities filed an answer. Party-controlled dismissal was not an option under Rule 41. Fed. R. Civ. P. 41(a). Unlike in *Blue*, there was no stipulated dismissal, settlement agreement, or tolling agreement. Aramark opposed dismissal, and wished to continue specifically before Judge McFadden. Pl. Mot. Dismiss ¶ 16, ECF No. 93.

The District Court proactively managed Aramark's dismissal, and sought and obtained from Aramark its initial statement of intent to file an opposition to the motion to dismiss. Supp. Record on Appeal, ECF No. 95 p. 6. Only after receiving Aramark's notification, given concurrently to Judge McFadden's Chambers and Ms. Abdelhady, that Aramark "reconsidered" its plan to file an opposition did the District Court enter the minute order dismissing Aramark from the action. *Id.* at p. 5. The District Court also made clear its intent to "conclusively resolve the litigation," by directing the clerk to "close this case." Min. Order, Mar. 20, 2023.

16

## II.    The Order is Alternatively an Appealable Interlocutory Order

If this Court concludes that the Order is not a "final decision" under 28 U.S.C. § 1291, it should review the Order under the collateral order doctrine and pursuant to 28 U.S.C.§ 1291. The Order 'finally determine[s] claims of right separable from, and collateral to, rights asserted in the action." *Cohen v. Benefit Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Six of the dismissed claims were not pleaded against Aramark and had no factual nexus to the negligence claims against Aramark. The claims dismissed under LCvR 7(b) concern motions filed and opposed only by GWU and PMA, and not Aramark. The District Court granted GWU summary judgement as an "immune" employer under the WCA. The same rationale is not and cannot be made applicable to Aramark, and is collateral to Count I against Aramark. The grant to PMA of summary judgment on Count I raises questions about the District Court's jurisdiction and abuse of discretion, and is also collateral to the merits of the negligence claim against Aramark. The entire Order is reviewable under the collateral order doctrine.

The Order has is additionally reviewable under 28 U.S.C. §1292(a)(1), both because it has "serious, perhaps irreparable consequence," *Carson*, 450 U.S. at 84, and disposed of claims on the merits, *Ctr. for Nat. Sec. Studies,* 711 F.2d at 412. "This circuit has allowed an interlocutory appeal where all predominant issues were settled in the*"* order having the practical effect of an injunction. *Id.* at 413.

17

"[S]uch a 'practical effect' order is appealable without more only if it 'affect[s] predominantly all of the merits.'" *Salazar ex rel. Salazar v. Dist. of Columbia*, 671 F.3d 1258, 1262 (D.C. Cir. 2012) (quoting *I.A.M. Nat'l Pension Fund Benefit Plan A v. Cooper Indus., Inc.,* 789 F.2d 21, 24 n. 3 (D.C. Cir. 1986)). The Memorandum Opinion harms Ms. Abdelhady as a party and professionally as an attorney, by attributing to her affidavit language it does not contain, and otherwise mischaracterizing the affidavit and describing it as a "sham" and an instrument of "opportunism." Mem. Op., ECF No. 66 p. 27. Ms. Abdelhady's motion to revise the Order and Memorandum Opinion under Rule 54(b) stated clearly that the District Court's account of the affidavit was a mischaracterization, and requested that the Court retract or furnish citations to the parts of the affidavit containing the language and meaning attributed to it. ECF No. 68-1 p. 15-16. By twice declining to entertain a Rule 54(b) motion to review and revise the Order, District Court confirmed that there is nothing "more that the district court 'may yet do,'" and that relief is simply not obtainable in the District Court, not even under the Federal Rules of Civil Procedure. *Salazar*, 671 F.3d at 1263 (trial court's intent to do nothing further favors review of an interlocutory having the practical effect of an injunction under § 1292(a)(1)). Moreover, the same affidavit and its 22 exhibits may not be used, or used effectively or without undue burden, including potentially further appeals, because the District Court deemed the affidavit a "sham" and on

that basis excluded 22 exhibits that were GWU's undisputed business records and DOES records. Mem. Op., ECF No. 66 p. 24-27.

As discussed above, the District Court disregarded the Amended Complaint's allegations, disregarded Ms. Abdelhady's motions papers, credited factual allegations improperly asserted in GWU's Rule 12(b)(6) motion, and "adopted" without explanation or discernable legal or factual basis GWU's filings on behalf of PMA. The District Court decided claims on the merits, but not on the written record. Nevertheless, the Order and Memorandum Opinion practically restrain the amendment or assertion of new claims against GWU and PMA. These and other consequences of the Order and Memorandum Opinion cannot be effectively reviewed on appeal from final judgment, as there is no ongoing litigation in the District Court, and none is planned against Aramark owing to the District Court's unwritten, unpromulgated subpoena "practice" that is incompatible with Fed. R. Civ. P. 45. *Salazar*, 671 F.3d at 1262

## CONCLUSION

This Court has jurisdiction to review the Order on appeal, which is a final decision under 28 U.S.C. § 1291. Alternatively, the Court has jurisdiction to review the Order as an interlocutory order under the 28 U.S.C. §§ 1291, pursuant to the collateral order doctrine, and 1292(a)(1), in which case the Court should

proceed to the merits or permit combined briefing on jurisdiction and the merits, which are intertwined. If the Court concludes that appellate jurisdiction is lacking, it should proceed under Fed. R. App. 21, without dismissing this appeal, so that a petition for a writ of mandamus may be filed in lieu of a brief.

Dated: June 5, 2023                    Respectfully submitted,

/s/ Hdeel Abdelhady
_____
Hdeel Abdelhady
D.C. Bar No. 483559
1717 Pennsylvania Ave., NW, #1025
Washington, D.C. 20006
(202) 630-2512
habdelhady@mapopllc.com
*Appellant*

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of Fed. R. App. P. 32(g) excluding the parts of the document exempted by Fed. R. App. P. 32(f), and the word limit of Fed. R. App. 27(d)(2)(A) because this document contains 5,187 words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 14-point Times New Roman font.

Dated: June 5, 2023

/s/ Hdeel Abdelhady
Hdeel Abdelhady

*Appellant*

## CERTIFICATE OF SERVICE

I certify that on June 5, 2023 I electronically filed and served a copy of the

foregoing paper on the following persons,

> Gerard. J. Emig, Esq.
> Gleason, Flynn, Emig, & McAffee, Chartered
> 11 North Washington Street, Suite 400
> Rockville, MD 20850
> *Counsel for The George Washington University*

> Robert P. Scanlon, Esq.
> Anderson & Quinn, LLC
> Adams Law Center
> 25 Wood Lane
> Rockville, MD 20850
> *Counsel for Aramark Services, Inc. and*
> *Aramark Management Services Limited Partnership*

> Samuel J. DeBlasis, II, Esq.
> DeCaro, Doran, Siciliano, Gallagher & DeBlasis, LLP
> 17251 Melford Boulevard, Suite 200
> Bowie, MD 20715
> *Counsel for PMA Management Corporation*

/s/ Hdeel Abdelhady
Hdeel Abdelhady
*Appellant-Ms. Abdelhady*